Filed 8/21/14  In re Nadia H. CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re NADIA H. and C. W., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B253798 (Super. Ct. Nos. J067930, J067931) (Ventura County) |
| HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JENNIFER H. et al.,<br><br>        Defendants and Appellants. | |

Jennifer H. (Mother) is the biological mother of C. W., born in December 2007, and Nadia H., born in June 2009.  On January 16, 2014, the juvenile court entered an order terminating her parental rights and selecting adoption as the permanent plan for both minors.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends the juvenile court erred because she maintained regular visitation and contact with the children and they would benefit from continuing their relationship with her.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

Ricky H. (Father), Nadia's biological father, also filed a notice of appeal from the juvenile court's order terminating his parental rights.  We appointed counsel to

---

[1] All statutory references are to the Welfare & Institutions Code unless otherwise stated.

1

represent Father on appeal. On April 4, 2014, counsel filed a brief in which she informed us that she had found no arguable issues. On April 29, 2014, we notified Father that he had 30 days within which to submit any contentions he wished us to consider, and that the appeal would be dismissed in the absence of any arguable issues. Father has not presented any issues for our consideration. Consequently, the appeal filed by Father on January 21, 2014 is dismissed as abandoned. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844-845; *In re Sade C.* (1996) 13 Cal.4th 952, 994.)

*Facts*

This dependency matter began in late August 2010 when Mother and Father were both arrested following an incident of domestic violence between them. The minors were placed in foster care where they remained until late October, 2010. On October 27, 2010, the juvenile court placed the minors in Mother's custody on the condition that Father could not live with them or have contact with the minors except under respondent's supervision. Mother complied with these restrictions and with her case plan which included classes in anger management, parenting and co-parenting. She also filed a petition for dissolution of her marriage to Father.

On April 5, 2011, Mother was arrested for unlawful sex with a minor, a 16-year old male. She had also been involved in two more violent incidents with Father. The minors were again placed in foster care because Mother was in jail. In the detention report, respondent expressed concerns regarding Mother's "recent history of substance abuse."

The minors remained in foster care for the remainder of 2011. In December 2011, after losing her job with the United States Navy, Mother enrolled in an in-patient substance abuse program and began attending weekly supervised visits with the minors. Both children appeared to be happy to see Mother and she was always loving and appropriate with them.

In June 2011, the juvenile court terminated reunification services for Father based on his failure to comply with his case plan. Father continued to attend supervised visits with the children.

2

When the status review hearing was held in early May 2012, Mother was employed and expected her divorce from Father to be final in September 2012. Mother was attending Alcoholics and Narcotics Anonymous meetings four to five times weekly and had inquired about registering for a domestic violence class at the Coalition to End Family Violence. On respondent's recommendation, the children were returned to Mother's custody. The juvenile court further ordered that Mother would not allow contact between the children and Father, except under respondent's supervision. In October 2012, the juvenile court dismissed the original petition, awarding sole legal and physical custody of the children to Mother.

Sadly, Mother's reunification with the minors was short lived. On July 1, 2013, respondent filed a new section 300 petition for the protection of the minors. Mother had relapsed on methamphetamine and left the children with Father in April 2013, despite her knowledge that Father was not permitted to have unsupervised contact with them. When Mother went to visit the children in late June 2013, she noticed that Nadia had red abrasions on her face, under her right eye and across the across the bridge of her nose. C. reported that Father had also struck him across the face. These incidents came to respondent's attention when Mother brought the children in to the agency, to apply for assistance. She explained that she left the children with Father when she began to relapse on methamphetamine, because she was homeless and believed they would be safer with him. Mother further stated that she had been sober for three weeks and was staying at a motel, with help from her own mother.

The children initially remained in Mother's custody. However, by early July 2013, they were detained in foster care. Respondent's Jurisdiction and Disposition Report noted that Mother admitted to having used methamphetamine as late as July 2013. While her subsequent drug tests had been negative for methamphetamine, Mother tested positive for cannabis on July 23, 2103, after the children were placed in foster care. Although she admitted to having relapsed, Mother did not enter a treatment program after the children were placed in foster care. She received extensive services during the prior dependency proceeding but had not, in respondent's estimation, benefitted from them.

3

She resumed using drugs "within the year of the prior dependency being dismissed and she was found in a period of relapse immediately prior" to the current proceeding. Respondent believed Mother would not benefit from services if they were offered to her again.

Mother was, according to respondent, "remorseful and heartbroken." Nevertheless, she had been battling addiction for most of the children's lives, had received extensive services and was still unable to avoid relapse. "Despite her knowledge of the resources available to her, [Mother] chose to use methamphetamines, which lead to her poor decision making and ultimate removal of the children for the second time. . . . [M]other's continual substance use despite completing a court ordered substance abuse treatment program, is an indicator that . . . mother will not benefit from another period of Family Reunification services."

After the jurisdiction and disposition hearing in August 2013, the juvenile court ordered that reunification services be bypassed for both Mother and Father. The court noted this decision was based on many facts, including Mother's admitted relapse on methamphetamine, her history of unresolved drug abuse and the fact that she failed to benefit from the reunification services she received during the prior dependency proceeding.

Within one month of the jurisdiction and disposition order, Mother was arrested for multiple offenses including evading a police officer (Veh. Code, § 2800.2, subd. (a)), driving under the influence causing injury (Veh. Code, 23153, subd. (a)), unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), leaving the scene of an accident (Veh. Code, § 20001, subd. (a)), eluding a pursuing police officer (Veh. Code, § 2800.4) and driving under the inflience. (Veh. Code, § 23152, subd. (a).) The police report notes that Mother stole a truck in Camarillo, failed to comply with an officer's attempt to make a traffic stop and then led sheriff's deputies on a pursuit. She collided into a vehicle, injuring the driver and a small child passenger. Mother fled the scene of the accident on foot and was captured a short distance away. Following her arrest, Mother tested positive for both methamphetamine and marijuana.

4

Between August and October 2013, Mother had the opportunity to attend six supervised visits with the children; she attended only three. Additional visits were suspended after Mother failed to confirm her attendance on three consecutive occasions. Mother had no contact with the children between September 5, 2013 and November 12, 2013. She was incarcerated for some, but not all of that time. During her incarceration, Mother did not call the children or inform respondent of her whereabouts.

Respondent's December 16, 2013 report for the January 16, 2014 section 366.26 hearing concluded, "The mother's continual substance use, despite having completing a court ordered substance abuse treatment program, and her poor decision making places the children at serious risk while in her care." Mother visited only sporadically over the previous three months and demonstrated behavior that "is not consistent with meeting the children's emotional needs." Mother had entered another residential substance abuse treatment program in Los Angeles and was unable to leave the site for a period of 30 days.

Meanwhile, the children were "happy" and "thriving" in their prospective adoptive home. According to respondent, "The foster parents have demonstrated their ability to meet the children's needs, have expressed their commitment to adopting the siblings, and have provided the children with a much needed nurturing, safe and stable home. The foster family has provided the structure and love the children have been missing throughout their childhood." The juvenile court found the children to be adoptable and terminated Mother's parental rights.

*Discussion*

Mother contends the juvenile court erred when it found she did not carry her burden to prove that she "maintained regular visitation and contact with the child[ren] and the [children] would benefit from continuing that relationship." (§ 366.26, subd. (c)(1)(B)(i).) We conclude the juvenile court's finding was supported by substantial evidence. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642; *In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)

Section 366.26 requires the juvenile court to terminate parental rights and select adoption as a child's permanent plan where a parent fails to reunify with an adoptable child. The court may chose a different permanent plan only if it finds the termination of parental rights would be detrimental to the child because the parent has "maintained regular visitation and contact with the child[ren] and the child[ren] would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

As we explained in *Marcelo B;* " 'To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449 . . . .) A beneficial relationship 'is one that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 . . . .) The existence of this relationship is determined by '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' (*Id.,*at p. 576.) (*In re Amber M.* (2002) 103 Cal.App.4th 681, 689 . . . .)" (*People v. Marcelo B., supra,* 209 Cal.App.4t at p. 513)

"Overcoming the statutory preference for adoption and avoiding the termination of parental rights requires the parent to show both that he or she has maintained regular visitation with the child and that the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) 'Sporadic visitation is insufficient to satisfy the first prong' of the exception. (*In re C.F.* (2011) 193 Cal.App.4th 549, 554 . . . .) Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 . . . .) Evidence that a parent has maintained ' "frequent

and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315-1316 . . . .)"  (*In re Marcelo B., supra,* 209 Cal.App.4th at p. 643.)

Here, substantial evidence demonstrates that Mother did not maintain regular visitation and contact with the children during the second dependency proceeding. First, the second dependency proceeding itself began because Mother abandoned the children to Father for a period of months while she was relapsing on methamphetamine and other illegal drugs.  Then, even after she claimed to have regained her sobriety, Mother briefly had the children in her custody and then missed three of the first six scheduled visits after they were detained in foster care.  Respondent suspended visitation because Mother failed to attend three consecutive visits.  Thereafter, she had no contact at all with the children until November 12, 2013.  During this same period, Mother also failed to inform respondent of her whereabouts.  This type of inconsistent contact and visitation does not satisfy the first prong of the "beneficial relationship" exception.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.)

Similarly, substantial evidence supports the juvenile court's finding that the relationship between Mother and the children was not so strong that the children would be greatly harmed by its termination. (*In re Angel B., supra,* 97 Cal.App.4th at p. 466.) Throughout both dependency proceedings, respondent has noted that Mother's interaction with the children is warm and loving.  The children were happy to see Mother on visitation days, but separated from her with little difficulty.  Both children have also adjusted well to foster care, to their prospective adoptive family and to the stability and predictability that placement provides to them.

We acknowledge the children are both old enough to understand Mother is their biological parent and to have formed an emotional bond with her.  But the substantial evidence shows this bond has been continually strained by substance abuse, homelessness, domestic violence and abandonment.  The last time Mother abandoned the children to Father's custody, both were beaten by him, resulting in facial bruises and other injuries.  After the children were returned to foster care, Mother relapsed on

7

methamphetamine, stole a vehicle and caused a head-on collision that injured a young child. Meanwhile the children flourished in foster care. However strong Mother's emotional connection is to the children, substantial evidence demonstrates that the emotional connection does not substantially outweigh the well-being, consistency, stability and safety the children have gained in their prospective adoptive placement.

The judgment terminating Mother's parental rights is affirmed. The appeal filed by Father is dismissed as abandoned.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

Bruce A. Young, Judge

Superior Court County of Ventura

_____

M. Elizabeth Handy, under appointment by the Court of Appeal, for Jennifer H., Appellant.

Karen B. Stalter, under appointment by the Court of Appeal, for Ricky H., Appellant.

LeRoy Smith, County Counsel, County of Ventura and Jaclyn Smith, Assistant County Counsel, for Respondent.